22-951, 22-1076. Mr. Dalton, is that correct? Okay, and you have reserved three minutes. Is that correct? Yes, Your Honor. Thank you. Please. Good morning. May it please the Court. Caleb Dalton on behalf of appellants, plaintiffs, CompassCare, First Bible, and NIFLA. The Court's recent decision in slattery controls the expressive association claim issue and narrows the other issues that need to be addressed. Slattery instructs that the dismissal of the expressive association claim be reversed and weighs in favor of plaintiffs' motion for a preliminary injunction. Defendants all but concede this point when they fail to even mention the expressive association claim in their reply brief. As to the free speech and free exercise claims related to employment provisions, plaintiffs recognize that those claims are foreclosed by slattery at this stage, but we do preserve them for appeal and rest on the briefing. Okay, so let's start high level. Under your interpretation of freedom of association, do you believe that an employer could avoid Title VII of the Civil Rights Act by saying that the First Amendment right to not associate with people of color or women? Likely not, Your Honor. Certainly if there was an association that proved that went through the Boy Scouts' three-pronged inquiry and proved that they were an expressive association, inclusion of a member could undermine that expression. Then the Court would have to look at the compelling interest test. And certainly throughout this nation's... Yes, Your Honor. I don't accuse. I think Hamas has got it right. I don't have to harm. Right, Your Honor. And I think that's right. And there is a balancing test. And certainly you can see in some instances where courts have found that balancing test isn't met and other instances such as here, the government has no compelling interest in coercing a messenger such as Compass Care or a church into hiring individuals who can't adequately convey that message. Okay, so but the balancing test implies, or a balancing test, I don't want to say the balancing test, but a balancing test implies you look at some very specific factors like the expressive activity on the part of the employer and what the position involved is. Would you agree? I disagree, Your Honor. And that is an important point, I think, of disagreement between the parties. The state here has said that you have to look at every individual employee and see. So, for example, in their brief, they talk about... No, I'm sorry. So I want to understand your position. Is your position that every employer and every employee has, that the employer has a right to make hiring decisions as to every employer and every employee? Is that the law that you are arguing we should find? Only if they meet the factors in Boy Scouts. The expressive association claim itself is very self-limiting. You first have to have an association that actually does join together for the purpose of expressing a message. And that's clearly the case here. Okay, so but how do we harmonize Boy Scouts in Heshaun v. King and Spaulding? Those are easy to harmonize. In Boy Scouts, you saw that including the messenger would undermine Boy Scouts' message. But in Heshaun v. King and Spaulding, the court found including women as partners in King and Spaulding would not undermine any message. So you're saying it's the exact same thing. It was merely a burden inquiry. And in Heshaun, so you're saying it's the same test, just in Heshaun it was no burden proofed. Yes, Your Honor. And the same in J.C.'s as well. The court looked there and said including women as full members wouldn't undermine the association's message. But that's not the case that we have here. Clearly, including individuals who can't communicate that message in a credible way undermines our client's ability to communicate that message. Let me ask you this. I may be missing something because as I read 203E1, there is no protection for applying for applicants. It only talks in terms of employees to WIC folks who are already on the payroll. So this statute, as I read it, doesn't have any application to what an employer says or does during the hiring and interview process. Actually, I think it would be an open question. Textually, I agree, Your Honor. It does look that way. The state, in their brief, I can't recall which footnote it is, but in a footnote in their brief, the state says that's an open question. It might actually apply to hiring. How is it an open question? The statute says an employer shall be prohibited from assessing an employee's personal record. We have a fondness for statutory text, and this seems pellucid to me. What am I missing? Your Honor, I agree that's what the text says. I'm just pointing out that the state has said it's ambiguous, and they might come after our clients for hiring practices as well. That's their position that they put in their brief. But I agree the text seems to apply to current employees. Only to current employees? Yes, Your Honor. What do we do about the part of the statute that suggests that the statute only protects an individual's private rights, that employers can still require them in the context of their employment to take a public-facing opinion? Well, Your Honor, that's no relief to our clients, to allow them to say you have to say one thing but do something else. Because actions speak louder than words. That's the same thing that we had. But doesn't that depend on what the actor does and to what extent the members of the public are aware of their own private decisions? No, Your Honor, because the right of expressive association doesn't just protect what the public sees. It's also an internal right to the organization. They join together for a specific purpose. And joining together with individuals who can't express that purpose, who can't credibly convey that purpose, who don't even believe it through their actions. So you're saying that you're backing away from the position that I understood you to have earlier, whereas it depends on who the employee is and what the employee's position is. Or are you not? Okay, explain to me. Your Honor, in general it does not depend on the employee. I think there could be fringe cases in which going to the second prong of Boy Scouts where you looked at that and said including that employee wouldn't undermine the message. But think of it this way. The defendants bring up that we didn't delineate which teachers that First Bible hires, which teachers express a message about abortion. Well, if one teacher is teaching bioethics and then the next room, the teacher, and their job is to discuss abortion. But the teacher in room 503 down the hall, they're just talking about social studies and they don't address abortion. Right, but doesn't that get into you can still require them to take a public-facing position? No, Your Honor. But you would agree that the statute does, that the statute says that this only governs private, only protects private action. It allows them to have a public-facing message, but allowing them to engage in private actions that undermine that message, that undermines the entire credibility of the organization. Counsel, let me ask you about potential difference between among your clients, the three plaintiffs. Isn't First Baptist potentially sort of to the side? You have two entities that are apparently really fully committed. Their whole mission is about abortion and reproductive rights. And a third that is a church organization, one of whose tenets relates to abortion and reproductive rights. Isn't there some possibility that there are differences here in terms of qualification of this expressive association claim? Amici make that argument, Your Honor, and they're absolutely wrong. If you look at the Boy Scouts case, Boy Scouts wasn't dedicated specifically to anything related to homosexual conduct. That wasn't what they were about. But expressing a message related to that was just a portion of it, and requiring them to include a messenger who couldn't express adequately a portion of their message was all that was necessary. So just because First Baptist expresses the gospel and part of that includes expressing a pro-life message doesn't mean that they're not also protected by the right of free association. This statute, as I read it, says an employer can't require an employee to give the employer information about reproductive decisions or drug or device uses. It then goes on to say that the employer can't retaliate with respect to compensation and so forth on the basis of a reproductive decision that the employee might have made. Help me understand how any of this translates into a violation of expressive association. Yes, Your Honor. So take the teacher, for example. We have a teacher who is teaching in this Christian school, and they come and they say, you know, last night I had a one-night stand and I used Plan B to take care of that problem. Well, that's perfectly legal under the law, but that undermines the message of the church, which wants to say, look, you shouldn't be engaged in one-night stands, and if you were to get pregnant, that abortion is not the appropriate option. And to have a teacher expressing that message or a counselor at one of these organizations that's dedicated to expressing a pro-life message to then require them to hire someone who maybe had an abortion. Why doesn't that fall into the public-facing requirement, right? If the person keeps their, doesn't say anything, why is that not sufficient under the law? Well, certainly if nobody said anything and our clients were not aware of it, it would never become an issue. It only becomes an issue if our clients. against somebody investigating and then reacting, right? I mean, isn't that, that's what I understand the law to prohibit. To the extent to which someone is announcing, that presents a different issue, right? Your Honor, if someone were to announce and then our clients were to take any action against them because of that, that would violate the laws. Which section would that violate? Section 1, Your Honor. Okay, if we disagree with you, why do you still prevail? So let's just assume for a second that we disagree with you and that under Section 1 you would be allowed to fire someone who publicly declared it. Do you still prevail? And just to clarify, I believe it's Section 2, Your Honor. Okay, so same hypothetical. Let's presume that we disagree with you. Do you still prevail? Yes, Your Honor. Under Slattery, Slattery did not go into is there a public profession. And so they're just following what Boy Scouts and JCs and all of the association cases look at, which is you don't look at is there a public profession. You look at can this person credibly be a part of an organization that's dedicated to a specific message. And our clients are dedicated to communicating a message, requiring them. So this would be just like requiring PETA to hire somebody who is engaging in the carnivore diet or is a hunter on the weekends. You can't say, and even if they don't tell anybody about it, that still undermines PETA's message to require them to hire this person who can't credibly actually be part of the organization. So if the teacher told the students, look, if you have unprotected sex, be sure to what you should think about taking a morning after pill. Does that violate the statute? I don't think it would. I've never done it, but if you have sex, I know young people do from time to time, be sure to take a morning after pill. That would violate our employee handbook, but I don't think it violates the statute. How does it violate the employee handbook? Because the employee handbook specifically prohibits, and I believe this is true for both the church and for Compass Care, prohibits our employees from advising somebody to engage in an action that could be abortifacient.  Because the statute only protects employees who are a product of health care choices, not students. So we've got just one quick question to confirm. Counts three and five are not before us on appeal. Is that right? I believe that's correct. Thank you. Good morning, Your Honor. May it please the Court. Laura Etlinger for the appellees. The Court should affirm as to the dismissal of all of the claims, including the expressive association claim, and reverse the order granting summary judgment as to the notice provision. Before I get into what is a primary issue here, that the right of expressive association does not extend to the employment context, I'd like to just clarify that the scope of the law is only, what it protects is people's private health care, reproductive health care decisions. An employer who takes action against an employee because the employee has advocated for a position that the employer opposes or has said something in their position that is not consistent with the employer's beliefs can be fired, notwithstanding Section 203E. It's only their private actions with respect to their reproductive health care decisions that are protected. But we are here to ask the Court to affirm dismissal of the claim because the right to expressive association, the precedents, which primarily involve membership organizations, do not extend to the employment context. Go ahead. Is the slattery an employment case? But the slattery, this issue of whether it applies in the employment context was not contested by the defendants. It was not raised by any party. But you were the defendant, right? So why didn't you contest it? It just didn't, wasn't an issue that came to us to raise in that case. So is your position, just to make sure that I understand it, that the slattery panel got this question wrong or they just assumed it without deciding it because it wasn't briefed? The second. They presume that those precedents all applied exactly the same way to the employment context. No party argued otherwise. Okay, but I'm still stuck on the fact that you were the party. So what do we do about the fact that the State was the defendant in the action and didn't squarely present this to the Court? Well, it's a question of law that the Court can address now. And the fact that it wasn't raised in a prior decision should not stop the Court from reaching the legal issue now, which is fully briefed by the party. Okay, but how would this case then affect the ongoing litigation and slattery? If we were to come here, what would it do to the slattery case? Because that's still moving. That is. That is in the discovery phase. Well, the defendants could raise the issue there, and the Court could decide whether, had it not raised it earlier, it could not be raised at that point. But it would be a rule that would apply to the employment context. And I'd like to explain why that is. First of all, neither the Supreme Court nor any circuit court has held that the right to expressive association does apply in the employment context. And the few district court cases that have addressed it, most of them held it does not apply, including just another one from the Western District in Washington that was issued after briefing occurred here. And if you go back to Roberts v. United States Jaycees, where the Supreme Court first expressly acknowledged an expressive association claim, the Court was concerned with avoiding government intrusion into the structure and affairs of an organization. And that concern is just not present in the employment context. But what I guess I don't ask was, what do you do about employers that have an expressive mission? So what do you do with an employer that is the Democratic Party, that is the ACLU, that is any number of organizations that their mission is, in fact, some form of speech? Even as to those organizations, they can take action against their employees who don't fully represent the employer's cause, who make statements or act in their role, in their employee role, in a way that does not support the organization's mission. But this is so that- But then how? Like if they don't have a- You're saying there might be some other hypothetical law that allows them to do that? No, no, that even this law does not prohibit an employer from taking action against an employee because they're- So you think what protects this law from being an impingement on freedom of association is the fact that it is- as opposed to either outward facing or known or public conduct. Is that right? Well, the conduct would have to affect the employer's message. So if an employer had a message- Okay, so that's less broad, though, than what you took the position before, right? Like, I mean, the idea of what is the nature of the organization, who is the speaker, that is less broad than saying freedom of association rights don't extend to employers. So if you could help me understand what your position is. So our first position is that it just doesn't apply here. And that's because it hasn't been recognized because in Heshaun, the court summarily rejected it. And later in Wisconsin v. Mitchell, the court explained that Heshaun rejected the argument that Title VII infringes an employer's First Amendment rights. And we think- Right, but that infringes- But saying that a particular behavior did not infringe on an employer's First Amendment rights is different than saying that an employer has no freedom of association rights. Well, I don't think- And I don't understand what your position is. Which one are you taking? Our first position is that it does not apply in the employment conduct. Okay, so no employer has any freedom of association rights. With respect to their relationship with their employees. And it's also because the expressive association cases that the Supreme Court has analyzed have always focused on the right of members of an organization to choose one another to come together for an expressive purpose. That's not what happens in the employment context. Employees don't choose one another. The employer is the one who makes the decision who it hires. And they are hired by the employer for the employer's purpose. It's very different from a membership organization where individuals with individual rights of expressive association come together for an expressive purpose. I'm not even worried you are, because I think my reading of this statute is that it has next- Please correct me if I'm wrong, because I'm very interested in counsel's response to this. I think it has next to nothing to do with expressive association. All this statute says is I, as an employer, can't require you to show me your health records or treatment records related to reproductive health. Then it goes on to say that I can't discriminate against you based on your- what I might find in the records or what I might learn about your reproductive choices. That's all it says. So I don't understand how this statute really gets to regulate anything that an employer can or cannot say in the workforce. At the job site. An employer may get fired for it, but I don't think the termination gives rise to a claim under this statute. What am I missing? Well, we agree that the statute does not prohibit an employer from taking action against an employee because of something the employee says in performing their duties. It protects their private decisions. And plaintiffs are arguing for a very broad expressive association right that would allow employers- to discriminate against all of their employees. If the court disagrees with our first point that it doesn't apply in the employment context, which no court has yet held, then there still should be affirmance of a dismissal of this claim because the allegations here is that the employer is totally protected from all of its employment decisions with respect to all of its employees, regardless of the position they fill and regardless of the nature of the belief they seek to protect in relation to that organization. Those allegations do not state an expressive association claim because even if the right to expressive association applies here, it should only apply to those employers who, as the Slattery Court found with respect to the Crisis Pregnancy Center in that case, the anti-abortion belief was the organization's defining value. That the employees who acted against that, the plaintiff argued there, were acting against the organization's very mission. And that's why First Bible is different from the other plaintiffs here. And then further than that, the nature of the position held by an employee has to be one where that position, the personal reproductive health care decisions of the person in that position, severely impact the employer's message. So that wouldn't apply. It's implausible that that could apply to every employee in each of these three organizations. So if the court disagrees on the first point, an affirmance of the dismissal should still be the result. Thank you so much. Mr. Dalton, you do have three minutes. Thank you. Slattery already answered most of the questions that have been presented this morning. Slattery held that this particular act does impose a severe restriction on the expressive association rights. How? How? Your Honor, it requires to take, for example, the CEO of Compass Care is in the room today. His job is to go on TV and to express the message of Compass Care that abortion is a wrong. And yet this statute says that if the board of directors finds out that he engaged in activity, a health care decision here that violates the core mission, that they cannot take adverse action against him for that. That he would have to go on TV and express one message, and yet in his private life he's expressing a completely different message. That's the same thing that this court addressed in Slattery. It's the same thing the court addressed in Dale. The state's position is the extreme one here. The state says that no employer has any expressive association right. And yet we're talking about a nonprofit religious organization dedicated to speaking one message, that life is valuable from birth or from conception until death. But all this, you know, I agree that we've got Slattery, Arte, and we've got other discussion of this particular statute. But I don't see how this statute reaches – and, you know, the ship may have sailed. I don't see how it reaches speech at all. It seems to me that if I'm the head of the Legal Defense Fund and I have an employee who comes in and says, well, you know, you guys don't really understand it, but, you know, blacks are genetically inferior or saying kind of thing at the ACLU or ADL, I'm fine. This statute is no impediment to that. And – Your Honor, but what if – I have the haunting feeling that I'm missing something. What if, though, the member of the NAACP that you talk about, they then go and participate in this – in a Proud Boys rally? But that's different than their deepest feelings being this. This – what your argument would do is allow the employer to probe into a person's distant personal history, their – into their really deeply held beliefs, not into what they say, not even into what they do publicly outside because their medical choices are protected by privacy even physically outside of work, right? So you're asking – you're saying that this is a choice that even if the employer would not otherwise know and nobody in the public would otherwise know, that somehow infringes the employer's free speech rights. Your Honor, we're not asking for the right to go investigate and – That's what the statute prohibits, though. So you're okay with Part 1? This is – the primary challenge is to Part 2, Your Honor, the prohibition on – if our – But if you don't know, right? And this is where we were talking about the difference between someone coming and going, man, I'm really not feeling well ever since I had that abortion last week, and you asking to – asking the question, you must, you know, sign an agreement not to have an abortion or to use birth control. You must tell us whether you've ever had an abortion or used birth control. That's a meaningful difference, the public statement, the revelation versus the delving into a person's private history. You're saying, though, that you have – that your clients are not looking for the ability to ask the question? They're only looking for the ability to act when they've become aware of the issue? That's a distinction that's not in the record. What's in the record is that our clients ask their employees to not engage in those. But nothing in the record indicates that our clients ever delve into those private questions as a matter of investigation. Then what is your jeopardy under this statute? It's a potential misdemeanor and fines, Your Honor. No, no. I don't mean the technical jeopardy. What is it you think you can't do under this statute? Under the statute, it prohibits our clients from, let's say, the teacher or the counselor, the example that I used before, a counselor who is – their whole purpose is to counsel women and to encourage them not to have an abortion, to give them information that would lead them to that choice. And yet they have an abortion on the weekend, and our clients believe – They can't be – And our clients could do nothing about it, Your Honor, under this statute. And that's why it's so important. This is no different than Boy Scouts, and it's certainly on all fours with slattery, and slattery controls this case. Thank you. Thank you all very much.